## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

|  |  |
|---|---|
| PARELLI NATURAL HORSE-MAN-SHIP, INC., a Colorado corporation,<br><br>        Plaintiff,<br>v.<br><br>LINDA PARELLI, a natural person, PAUL FLOCKHART aka ANDREW WOOD, a natural person, SUE FLOCKHART aka SUE LAMSWOOD, a natural person, HAPPY HORSE HAPPY LIFE, INC., a Florida corporation, and ANDREW WOOD, INC., a Florida corporation dba Legendary Marketing,<br><br>        Defendants. | Case No: _____ |

## COMPLAINT FOR DAMAGES WITH INJUNCTIVE RELIEF SOUGHT

Parelli Natural Horse-Man-Ship, Inc., a Colorado corporation (hereinafter "Plaintiff" or "PNH") sues the Defendants, Linda Parelli, Paul Flockhart aka Andrew Wood (hereinafter "Paul "Andrew Wood" Flockhart"), Sue Flockhart aka Sue Lamswood (hereinafter "Sue 'Lamswood' Flockhart"), Happy Horse Happy Life, Inc. (hereinafter "HHHL, Inc.") and Andrew Wood, Inc., and in support thereof, alleges as follows:

### STATEMENT OF THE CASE

1.      This is an action at law and in equity for trademark infringement and unfair competition under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* and under common law; deceptive trade practices arising under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq., misappropriation of trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA"), Fla. Stat. § 688.001 et seq.; and for civil

conspiracy, tortious interference with contractual relationships, tortious interference with advantageous business relationships, and breach of contract, under Florida common law, all arising out of defendant Linda Parelli's breach of her fiduciary duties to the plaintiff corporation, Parelli Natural Horse-Man-Ship, Inc.   Accordingly, this is also an action for breach of fiduciary duty under the laws of the State of Colorado, or alternatively, under the laws of the State of Florida.

## THE PARTIES

2.      Plaintiff Parelli Natural Horse-Man-Ship, Inc. ("PNH") is a closely held Colorado corporation having its principal place of business located in Pagosa Springs, Colorado.

3.      Defendant Linda Parelli is an adult individual residing at 8695 NW 120th Street, Reddick, Florida, and at all times material hereto was a 50% shareholder and director of PNH and is a driving force behind the tortious conduct alleged herein.

4.      Plaintiff is informed and believes, and based thereon alleges, that defendant Paul Flockhart aka Andrew Wood (hereinafter "Paul "Andrew Wood" Flockhart") is an adult individual residing at 5723 W Bonanza Drive,  Beverly Hills, Florida.

5.      Plaintiff is informed and believes, and based thereon alleges, that defendant Sue Flockhart aka Sue Lamswood (hereinafter "Sue "Lamswood" Flockhart") is an adult individual residing at 5723 W Bonanza Drive,  Beverly Hills, Florida.  Paul "Andrew Wood" Flockhart and Sue "Lamswood" Flockhart are husband and wife and are collectively referred to herein as "the Flockhart Defendants".

6.      Defendant Happy Horse Happy Life, Inc. (hereinafter "HHHL, Inc.") is a Florida corporation, trades under the registered fictitious name, Happy Horse Happy Life, and

has a registered principal place of business located at 3729 S Lecanto Hwy, Inverness, Florida. The Flockhart Defendants, on information and belief and at all times material hereto, a) are the sole owners and officers of HHHL, Inc., had knowledge and control over its day-to-day operations, and b) aided, abetted, participated in, approved, ratified and/or induced Defendant HHHL, Inc.'s tortious acts as set forth herein.  Defendant HHHL, Inc., defendant Paul "Andrew Wood" Flockhart, and defendant Sue "Lamswood" Flockhart are hereinafter collectively referred to as the "HHHL Defendants".

7.     Defendant Andrew Wood, Inc. is a Florida corporation, trades under the registered fictitious name, Legendary Marketing, and has a registered principal place of business located at 3729 S Lecanto Hwy, Inverness, Florida.  Defendant Paul "Andrew Wood" Flockhart and defendant Sue "Lamswood" Flockhart, on information and belief and at all times material hereto are the sole owners, officers and directors of defendant Andrew Wood, Inc., and had knowledge and control over its day-to-day operations and were the driving forces behind the tortious conduct alleged herein.

## JURISDICTION AND VENUE

8.     This is an action for, inter alia, trademark infringement under 15 U.S.C. § 1114(1) and for use of false designation of origin under 15 U.S.C. § 1125(a).

9.     This Court has subject matter jurisdiction over the claims pursuant to 15 U.S.C. §1121 and 28 U.S.C §§ 1331 and 1338.

10.     Pendent or supplemental jurisdiction of this Court exists for the state law claims stated herein pursuant to 28 U.S.C. §1367(a), each of which arise out of a common nucleus of operative facts with those from which the federal claims arise.

11.     This Court has personal jurisdiction over Defendants pursuant to Fla. Stat.

§§48.193(1)(a)(1), 48.193(1)(a)(2) and 48.193(2)  in that each of the Defendants reside in this district and are operating, conducting, engaging in and carrying on a business in this state, have a place of business in this state, committed a tortious act within this state wherein Plaintiff's business was harmed in this state, and each of the Defendants are engaged in substantial and not isolated activity within this state, all of which is described in more detail *infra* in the "Facts Common to All Counts" section.

12.     Venue is proper in this district pursuant to 28 U.S.C. §§1391 because: (i) all defendants reside in this district; and (ii) a substantial part of the events giving rise to plaintiff's claims occurred in this district.

### FACTS COMMON TO ALL COUNTS

A.  **PNH's Business**

10.     Plaintiff is a corporation founded on October 18, 2002 according to the laws of the US state of Colorado with its domicile in Pagosa Springs, Colorado. PNH currently has two equal shareholders and directors, namely Pat Parelli and Linda Parelli, who, at the time of the filing of this Complaint are husband and wife in the process of divorce.

11.     The Parelli Program is a program founded nearly 40 years ago by Pat Parelli, who teaches people all over the world how to communicate and interact with horses. It supports personal development and is based on the idea that a deeper understanding of horses helps humans to overcome their fears and frustrations with horses and to develop more meaningful and rewarding relationships with them.

12.     The Parelli Program is based on equine psychology and behaviour (as well as technique) and is well ahead of other programs from the aspects of safety, results, and preservation of the horse's dignity. The Parelli Program is not just about riding and training

horses, but rather is about imparting knowledge and strategies to humans which enable them to develop a better relationship with and understanding of their horses.  Furthermore, the Parelli Program is not limited to any single horse-riding discipline (such as dressage or jumping), but serves as the foundation for horsemanship, which can be applied to all the disciplines.  The program teaches a "natural" form of horsemanship based on horse-to-horse interactions in nature, which contrasts with more traditional methods which in large part use a horse as a mere tool (rather than a partner) thereby imposing human will over the horse through trapping, restriction of movement, force, fear, and intimidation to accomplish a desired task.

13.     Pat Parelli gave his first seminar on the subject of horsemanship in 1982.  His seminar was based on 8 principles, which he later named The Eight Principles of Natural Horsemanship. These 8 principles continue to be the heart of Plaintiff's teachings.

14.     Within a year of providing his first lesson, the well-respected magazine, *Western Horseman,* carried a feature story on Pat.  Early in his career, he was already making a name for himself as a skilled instructor with a unique perspective on the horse/human relationship.

15.     In 1983, Pat created his first horsemanship center in Clements, California.  By 1984 he was invited to give a bridleless riding demonstration at the Summer Olympics held in Los Angeles.  By 1986, Pat Parelli was being invited to speak at national conferences and began to offer clinics in Europe.  The same year he began selling training equipment manufactured per his designs and specifications.  In 1987, Pat travelled to Australia where he was featured on Australian television.   In the years that followed, Pat Parelli's live demonstrations and clinics continued to grow in popularity as he toured throughout the United States and abroad.

16.     In 1990, Pat Parelli coined the term "Natural Horse-Man-Ship" and named his program of instruction Parelli Natural Horse-Man-Ship.  On July 17, 1991, he founded Parelli Natural Horsemanship, Inc. under California law, in order to formalize his business operations. In order to facilitate a deeper understanding of his methods and make them available to a broader audience than demonstrations and clinics alone could provide, Pat created and published (through his corporation) his first multi-volume home study video program entitled, Pat Parelli's Natural Horse-Man-Ship Course, in 1991.  This home study program included his now world famous "Seven Games" which serve as a foundation of his methods to date.

17.     Pat Parelli and Linda Parelli were married in 1995.

18.     During the period 1999 to 2001, Parelli Natural Horsemanship, Inc. launched the Parelli "Levels" home study program which have since been revised several times and remains one of the most popular components of the Parelli Program today. The popularity of the Parelli "Levels" program is likely attributed to the pedagogical or "step-by-step" manner in which extremely complex issues are broken down into understandable and manageable pieces which are then reassembled in a progressive manner as one progresses through the Levels program.  This systematic and progressive teaching approach, coupled with the Eight Principles, Seven Games, and Pat's novel training equipment, together constitute what is arguably the most unique and popular program of instruction in natural horsemanship in existence.

19.     In 2002, the company was reorganized in Colorado (instead of California) where its principal place of business was located at which time Linda Parelli became a shareholder and director of PNH.  The California corporation was subsequently dissolved.

20.     Still further, Plaintiff created special television programs for public broadcast

on the DISH Network (in the U.S.), DirecTV (in the U.S.), Horse and Country TV (in the U.K.) to spread the Parelli Program to large audiences.  The popularity of Plaintiff's program of instruction is such that in 2003 Pat Parelli was invited to give a demonstration of Parelli Natural Horsemanship methods to Her Majesty the Queen and other distinguished guests including the US Ambassador to the UK, Head of the Cavalry, Head of the Kings Troop, Head of the Metropolitan Police Mounted Division, The Queens Equerry, and Head of the Ceremonial Horses. The 3-hour presentation took place at the Royal Mews, Buckingham Palace.

21.     In 2006, Plaintiff supplemented its core Levels program with a multi-volume multimedia kit entitled, Liberty and Horse Behavior, an in-depth exploration of horse psychology and behavior, and in of 2007 introduced yet another multi-volume multimedia kit entitled, Parelli Success Series,  which provides an overview of the entire Parelli program of natural horsemanship including the debut of its "Horsenality" model of horse behavior profiling as embodied in textual materials, works of the visual arts and an audiovisual work (DVD).  This groundbreaking educational tool teaches students to modify their horse-human communication techniques based on their horse's individual innate behavioral characteristics and traits (i.e., its "horsenality").

22.     At least as early as 2009, PNH built a social media presence by, inter alia, creating and managing a Parelli Natural Horsemanship Facebook Page which, at the time of the filing of this Complaint, has nearly 200,000 followers.

23.     In order that students who cannot attend courses and clinics might still be able to avail themselves of professional hands-on support when needed, Plaintiff trained and licensed instructors all over the world.    These instructors are called "Licensed Parelli Professionals" (hereinafter also referred to as "LPPs" or merely "PNH instructors"). Prior to

the tortious acts of defendants set forth herein, PNH had 175 such instructors.

24. In 2011, PNH expanded its social media presence by creating separate Facebook Pages for Pat Parelli, Linda Parelli as well as others. PNH's Linda Parelli Facebook Page (hereinafter the "LP FB Page") has been regularly managed by PNH since that time, for the purpose of promoting the PARELLI brand generally, Linda Parelli and more recently, the PNH HAPPY HORSE brand of instructional courses discussed infra.

25. Plaintiff has also created a comprehensive collection of video and literary works on the subject of natural horsemanship generally, and the Parelli Program in particular, spanning the last nearly four decades. This comprehensive database of educational materials is made available to members of PNH's Savvy Club on a subscription basis and helps Savvy Club members solve problems frequently encountered when interacting with their horse on the ground or while riding. Together, Plaintiff's archive of video footage, TV programs, articles and other literary works created and compiled over the last nearly four decades show consistent use of enduring principles that have withstood the test of time and constitute one of the largest, if not the largest, collections in existence created by a single source.

**PNH's Trademarks**

26. Since at least as early as November 30, 1990 and continuing to the present date Plaintiff has been doing business in the United States and abroad, using in the State of Florida and in commerce the word marks "PARELLI NATURAL HORSE-MAN-SHIP" and "PARELLI", and the stylized version of the mark "PARELLI" with accompanying horse head design as trademarks in connection with its products and services (together the "PARELLI Marks").

27. Plaintiff has acquired trademark rights to the PARELLI Marks both at common

8

law from at least as early as and after said date and further by virtue of the following federal

trademark registrations with the United States Patent and Trademark Office:

| Registration No. | Mark | Goods |
|---|---|---|
| 1,775,523 | PARELLI NATURAL HORSE-MAN-SHIP | IC 041: education and training services in the nature of live clinics and workshops and video courses relating to horse and mule handling and training |
| 3,633,666 | PARELLI | IC 009: Prerecorded [ audio cassettes, video cassettes, audio discs, and ] video discs, all featuring instruction in the fields of natural horsemanship and horse training;<br>IC 016: Printed materials in the form of books, magazines, pamphlets, guides and calendars, all in the field of natural horsemanship;<br>IC 018: Leather saddlery and horse tack, namely, saddles and bridles; horseback riding and horse training equipment, namely, lead ropes, long ropes, halters, hackamores, reins, training rods, ropes with latigo poppsers, saddle pads, bareback pads and tote bags;<br>IC 025: Clothing, headwear and footwear, namely, socks, riding gloves, polo shirts, shirts, t-shirts, sweaters, sweatshirts, sweatpants, pants, jodhpurs, riding breeches, [ chaps, chinks, ] riding coats, jackets, wind resistant jackets, coats, vests, caps, hats and visors;<br>IC 035: Advertising and publicity services, namely, promoting the services of independent licensed instructors of the Parelli Natural Horsemanship program through online and printed media; and<br>IC 041: Educational and entertainment services, namely, conducting classes, seminars, conferences, demonstrations and workshops in the field of natural horsemanship and horse training; educational services, namely, providing programs of instruction, internships and residency programs for qualifying others to |

| | | become instructors in the field of natural horsemanship; educational testing, namely, knowledge and skills testing and examination services in the field of natural horsemanship; entertainment and sporting services, namely, organizing events designed to demonstrate and test participants' natural horsemanship skills; horse training services; production of television shows and motion pictures in the field of natural horsemanship and horse training; fan club services; providing a website featuring Pat Parelli and his associates on the subject of training horses and natural horsemanship. |
|---|---|---|
| 4,130,109 | Parelli | Same goods and services as Reg. No. 3,633,666 |

True and correct copies of the Certificates of Registration for each of the above marks are attached hereto and marked as Exhibits A, B and C, respectively.

28.     Plaintiff's Registration Nos. 1,775,523, 3,633,666 and 4,130,109 for the PARELLI Marks are valid, subsisting, unrevoked, uncancelled and incontestable, and are prima facie evidence of the validity thereof and of Plaintiff's ownership and exclusive right to use its PARELLI Marks in commerce, and are constructive notice of Plaintiff's ownership thereof, all as provided by §§ 7(b) and 22 of the Federal Trademark Act of 1946, as amended.

29.     Additionally, since at least as early as September 15, 2018 and continuing to the present date Plaintiff has been doing business in the United States and abroad, using in the State of Florida and in commerce the word mark "HAPPY HORSE" as a service mark in connection with courses of instruction in the field of horsemanship and horse behavior (the "HAPPY HORSE Mark"). The PARELLI Marks and the HAPPY HORSE Marks are

10

collectively referred to as the "PNH Marks".

30.     Plaintiff has acquired trademark rights to the HAPPY HORSE Marks at common law from at least as early as and after the above recited date.  True and correct copies of exemplars of Plaintiff's use of the HAPPY HORSE mark dating back to 2018 are attached hereto and incorporated herein as Composite Exhibit D.

31.     Plaintiff has extensively advertised and promoted its products and services under the PNH Marks, so much so that the purchasing public has come to know, rely upon, trust and recognize the products and services of Plaintiff by the PNH Marks.

32.     As a result of Plaintiff's investment of time, energy and resources, and continuous use of the PNH Marks since the above-recited dates of first use, Plaintiff's products and services branded with the PARELLI Marks and services branded with the HAPPY HORSE Mark have achieved great success in the United States, the PNH Marks have come to distinguish Plaintiff's goods and services from the goods and services of others, and the PNH Marks have come to represent substantial and highly valuable goodwill belonging exclusively to Plaintiff.

**PNH Hires Andrew Wood, Inc.**

33.     In or around January 2009, PNH hired Andrew Wood, Inc. to develop and implement a marketing program design to increase memberships in, and revenues from, PNH's Savvy Club subscription-based membership program.   A copy of the Marketing Consulting Agreement between PNH and Andrew Wood, Inc. is attached hereto and incorporated herein as Exhibit E.   The fully-executed Marketing Consulting Agreement has been either lost or mislaid by Plaintiff, however, upon information and belief, Defendant Paul "Andrew Wood" Flockhart did execute the agreement on behalf of Defendant Andrew Wood,

Inc. in the presence of PNH's former CEO, Mark Weiler.  A fully executed original or copy of the Marketing Consulting Agreement is believed to be in the possession of Defendant Andrew Wood, Inc.  Moreover, PNH and Andrew Wood, Inc. acted pursuant to the terms of the Marketing Consulting Agreement with the exception of Defendant Andrew Wood, Inc.'s breach thereof as set forth herein, infra.

34.     In order to carry out the purpose of the Marketing Consulting Agreement, PNH provided Andrew Wood, Inc. access to confidential, proprietary and trade secret information of PNH including, but not limited to, information regarding PNH's business, operations, customer lists and contact information, research and development, accounts, business plans, operating results, sales, know-how, pricing and techniques for sales, profits, products, products under development, costs and financial data (collectively the "PNH-shared Confidential Information").

35.     Section 9 of the Marketing Consulting Agreement provides as follows:

A) Marketing Consultant shall preserve in trust as confidential and shall not use, directly or indirectly, or allow to be used, any Confidential Information except as necessary to carry out the Purpose and shall not at any time, either during employment or after employment terminates or expires, directly or indirectly reveal, report, publish, transfer, disclose or permit disclosure of such Confidential Information to any person other than authorized employees of Marketing Consultant with a specific need to know and who are bound by this Agreement and agree to maintain such Confidential Information in confidence.

B) Marketing Consultant agrees that all Confidential Information is owned solely by Parelli.

C) Confidential Information shall not be duplicated by Marketing Consultant except as necessary to carry out Marketing Consultant's duties for Parelli.

D) Marketing Consultant agrees that the names of customers are and shall remain the exclusive property of Parelli, are confidential and are of great value to Parelli.   Marketing Consultant further agrees that all other information used by Parelli in soliciting customers, including, but not by way of limitation, pricing lists, sales invoices and the names of customers' personnel are trade secrets, are confidential and are the valuable property of Parelli, and that any such engagement is and shall remain the property of

Parelli.

E) Marketing Consultant recognizes and acknowledges that certain services which Parelli performs will be confidential, that the good will of Parelli depends on, among other things, keeping such services and information confidential and that unauthorized disclosure of the same would irreparably damage Parelli.

F) Further, Marketing Consultant recognizes and acknowledges that the business matters and affairs of Parelli, and the methods of business operations of Parelli are valuable and confidential and that unauthorized disclosure of the same would irreparably damage Parelli.

G) Nothing herein shall require Parelli to disclose any of its Confidential Information to Marketing Consultant.

H) This Section shall survive termination or expiration of this Agreement.

36.     Andrew Wood, Inc. provided its services to PNH under the Marketing Consulting Agreement during the period January 1, 2009 until December 31, 2009, becoming intimately familiar with the PNH-shared Confidential Information.

37.     By letter dated December 23, 2009, PNH terminated the Marketing Consulting Agreement with Andrew Wood, Inc.  A copy of the termination letter is attached hereto as incorporated herein as Exhibit F.

**Defendants' Wrongful Activities**

A. **Linda Parelli and the Flockhart Defendants Conspire to Compete with PNH**

38.     Upon information and belief, at least as early as July 2020, Defendant Linda Parelli, while an acting member of the Board of Directors of PNH, conspired with the Flockhart Defendants to join forces as partners and compete with PNH using, inter alia, confidential, proprietary and trade secret information of PNH, including the PNH-shared Confidential Information, the PNH Marks, PNH social media assets, and PNH-owed tangible assets, as more fully set forth herein.

B. **Wrongful Use of the PNH Marks**

39.     In order to carry out their plan to compete with PNH, Linda Parelli and the Flockhart Defendants decided to name their competing business HAPPY HORSE HAPPY

13

LIFE, in order to capitalize on the goodwill associated with PNH's well-established HAPPY HORSE Mark.

40.     On August 7, 2020, in order to further carry out their plan to compete with PNH using the PNH HAPPY HORSE Mark, Defendant Paul "Andrew Wood" Flockhart registered the domain name, www.happyhorsehappylife.com.   Linda Parelli and the Flockhart Defendants' website prominently displaying the PNH HAPPY HORSE Mark and offering competing products and services went public shortly thereafter.

41.     On or about September 14, 2020, in order to further carry out their plan to compete with PNH using the PNH HAPPY HORSE Mark, Linda Parelli and the Flockhart Defendants renamed her dormant Pegasus Personal Growth Facebook Page, used in connection with her dormant personal growth business, to "Happy Horse Happy Life" (hereinafter the "HHHL FB Page"). Since that date, the Page has been used by Linda Parelli, the Flockhart Defendants, and later the HHHL Defendants to promote their competing business with multiple uses of the PNH HAPPY HORSE Mark.  True and correct copies of the infringing use of the PNH HAPPY HORSE Mark are attached hereto and incorporated herein as Composite Exhibit G.

42.     On or about September 14, 2020, if not earlier, Linda Parelli and the Flockhart Defendants began posting on the HHHL FB Page and the LP FB Page a series of advertisements for a "Win A Weekend With Linda Parelli" giveaway, each post including a hyperlink directed to Linda Parelli's personal website located at the URL www.lindaparelli.com (the "Linda Parelli Website), which was modified to include promotion of the HAPPY HORSE HAPPY LIFE competing business including links to the www.happyhorsehappylife.com website.  Upon information and belief, Linda Parelli and the

Flockhart Defendants used this giveaway as a means of growing their customer database in competition with PNH by exploiting the PARELLI brand name.

43.     On September 23, 2020, in order to further carry out their plan to compete with PNH, defendant Paul "Andrew Wood" Flockhart formed the defendant corporation, Happy Horse Happy Life, Inc.

44.     On September 29, 2020, in order to further carry out their plan to compete with PNH, defendant Paul "Andrew Wood" Flockhart registered the fictitious name HAPPY HORSE HAPPY LIFE on behalf of HHHL, Inc.

45.     On September 30, 2020, Linda Parelli, without PNH authorization or approval, posted on the HHHL FB Page that she and Pat Parelli needed to divorce because "[s]adly, for some years now Pat has become more interested in leading a different personal life…" The aforesaid post was willful and malicious and intentionally designed to bring Pat Parelli into disrepute, thereby damaging PNH as a competitor.

46.     On or about October 1, 2020, as a follow up to the above maligning post, Linda Parelli and the HHHL Defendants launched a series of posts spanning several weeks on the HHHL FB Page featuring videos of herds of running horses with the captions: "We're all heading to Linda's new community…HappyHorseHappyLife.com".  These posts were willful and malicious and intended to represent PNH's students, customers, Savvy Club members and Licensed Parelli Professionals leaving PNH to join the competing business of Linda Parelli and the HHHL Defendants.  Intermixed with the above-recited posts were posts prominently depicting the PNH's HAPPY HORSE mark.

47.     On or around October 2, 2020, in order to further carry out their plan to compete with PNH, Linda Parelli and the HHHL Defendants launched an email campaign directed at

PNH's Savvy Club members, customers and Licensed Parelli Professionals promoting their HAPPY HORSE HAPPY LIFE branded business.  Upon information and belief, Linda Parelli and the HHHL Defendants used PNH's trade secret customer email list, obtained directly from Linda Parelli, from PNH employees acting under her direction, and/or from Defendant Andrew Wood, Inc. for this purpose.

48.    On October 8, 2020, in a further effort to carry out their plan to compete with PNH, Linda Parelli and the HHHL Defendants leveraged the LP FB Pag, and thus the PARELLI brand name, for the promotion of the www.happyhorsehappylife.com website in a post by Linda Parelli.  This was the first of numerous posts which continue to date aimed at promoting the HAPPY HORSE HAPPY LIFE branded competing business of Linda Parelli and the HHHL Defendants.

49.    In order to deter PNH from taking any action regarding the above-recited activities of Linda Parelli and the HHHL Defendants, Linda Parelli assured PNH's management that her new business would not be in competition with PNH.  In the weeks that followed, as more information was added to the www.happyhorsehappylife.com website, defendants' social media Pages, and through defendants' email campaign, it became evident to PNH that Linda Parelli's assurances were entirely false.  To the contrary, PNH would learn through the above-recited avenues of communications that the Happy Horse Happy Life business model was to directly compete with PNH by offering: 1) its own subscription-based membership program to compete with PNH's Savvy Club, 2) live courses of instruction and learning materials on the subjects of horsemanship and horse behavior, 3) a Happy Horse Happy Life Instructor Mentor program to compete with PNH's Licensed Parelli Professionals Program, and 4) branded apparel and merchandise, among other things.

C. **Linda Parelli and the HHHL Defendants Solicit PNH's Instructors**

50.     Armed with the knowledge of PNH's internal business operations, including the fact that PNH routinely sends out contracts to its team Licensed Parelli Professionals for renewal of their annual licenses with a December 31, 2020 deadline, at least as early as mid-November, 2020, Linda Parelli and the HHHL Defendants announced through emails, social media and their website the launch of their HAPPY HORSE HAPPY LIFE branded Instructor Mentor program inviting PNH's Licensed Parelli Professionals to become certified to teach the HAPPY HORSE HAPPY LIFE curriculum.  Linda Parelli, as a still member of PNH's Board of Directors, together with the HHHL Defendants misinformed PNH's Instructors that they could be simultaneously licensed as PNH Instructors and certified as HHHL, Inc. instructors; that the two were not mutually exclusive.

51.     To the contrary, and as Linda Parelli was well aware, PNH's Instructors are contract bound to teach only "Pure Parelli" in order to assure the quality of services provided by its Instructors under the LICENSED PARELLI PROFESSIONALS brand remains consistent, thereby protecting the reputation of the LPP and PARELLI brands.  Specifically, paragraphs 5.2.1. of the Parelli Professionals License Agreement states:

- No Modification of Parelli Natural Horse-Man-Ship. You may not add to, subtract from, or otherwise modify any portion of the Parelli Natural Horse-Man-Ship brand of instruction in the performance of the Services which You have been licensed to provide or otherwise. Certification will only be awarded to and maintained by those individuals who agree to teach and practice "Pure Parelli" rather than any material variation thereof.

Additionally, paragraph 7.2.6. of the Parelli Professionals License Agreement states:

- <u>Involuntary Termination and Effect Thereof.</u> Without prejudice to any other rights, Parelli may terminate this Agreement if You:

  o <u>Unauthorized Products/Services.</u> Endorse, advertise, sell, distribute or provide, directly or indirectly (i.e., through a separate business entity such as a corporation, company, etc.) any equine related product, service, therapy, system or method of training without the express written permission of Parelli and then only in conformity with the Guidelines[.]

52.     The aforesaid misrepresentation of Linda Parelli and the HHHL Defendants forced PNH to inform its instructors through private emails on or about November 25, 2020, that, inter alia, Linda Parelli and HHHL, Inc. are in direct competition with PNH, and that they would not be permitted to simultaneously be HHHL instructors and PNH Instructors.

53.     On November 26, 2020 (Thanksgiving Day in the U.S.), Linda Parelli, while still a PNH Board member, and the HHHL Defendants responded by posting on their HHHH FB Page a scathing, highly offensive and extensive series of remarks, information and misinformation, all damaging to the reputation of Pat Parelli and PNH, in an effort to paint Linda Parelli as a sympathetic victim in both her personal life with Pat Parelli and in her business life with PNH, and to villainize Pat Parelli and PNH, all in an effort to garner the support and patronage of PNH's students, customers, Savvy Club members and Licensed Parelli Professionals, and to acquire them as their own (hereinafter, the "Thanksgiving Day Post").

54.     The Thanksgiving Day Post included confidential, proprietary and trade secret information of PNH, including PNH-shared Confidential Information previously provided in

confidence to Defendant Andrew Wood, Inc.

55.     As a direct and proximate result of the Defendants' conduct, PNH and Pat Parelli have suffered and will continue to suffer substantial pecuniary injury associated with, inter alia, loss of PNH students of its courses of instruction, customers of its apparel, merchandise, equipment and educational materials, Savvy Club members, at least ten (10) Licensed Parelli Professionals, and loss as well as significant, pervasive and permanent damage to its reputation in the horsemanship industry.

56.      Plaintiff has retained the undersigned legal counsel to represent it in this action for the wrongful conduct of defendants and has agreed to pay said counsel a reasonable fee for these services.

## COUNT I
## BREACH OF FIDUCIARY DUTY
### (As against Linda Parelli)

57.     Plaintiff adopts, realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 56 above.

58.     As a Director and shareholder of PNH, Linda Parelli is a fiduciary of PNH, owes PNH the duties of care, good faith and loyalty, and has the responsibility to at all times act in the best interests of PNH and maintain in confidence all PNH confidential, proprietary and trade secret information.

59.     PNH entrusted Linda Parelli with its confidential, proprietary and trade secret information pursuant to that fiduciary relationship.

60.     Linda Parelli breached her duty of loyalty to PNH by surreptitiously planning to form a business partnership with the Flockhart Defendants for the purpose of directly competing with PNH.

61.     The above-recited planning was performed by Linda Parelli using PNH assets, including a PNH-owned computer, a PNH-owned mobile phone and PNH mobile phone account.

62.     Linda Parelli breached her duty of loyalty to PNH by actually entering into a business partnership with the Flockhart Defendants for the purpose of directly competing with PNH.

63.     Linda Parelli breached her duty of loyalty to PNH by entering into a business relationship with Happy Horse Happy Life, Inc. for the purpose of directly competing with PNH.

64.     Linda Parelli breached her duty of loyalty to PNH by disclosing without authorization, directly or through PNH employees operating under her direction, PNH's confidential, proprietary and trade secret information to her co-conspirators Paul "Andrew Wood" Flockhart, Sue "Lamswood" Flockhart and Happy Horse Happy Life, Inc.

65.     Linda Parelli breached and continues to breach her duty of loyalty to PNH by, directly and in cooperation with her co-conspirators the HHHL Defendants, using PNH's confidential, proprietary and trade secret information, including the PNH-shared Confidential Information, in connection with their competing business.

66.     Linda Parelli breached and continues to breach her duty of loyalty to PNH by, directly and in cooperation with the HHHL Defendants, infringing the PNH Marks.

67.     Linda Parelli breached and continues to breach her duty of loyalty to PNH by, directly and in cooperation with the HHHL Defendants, misusing PNH's social media assets to promote the competing business of Linda Parelli and the HHHL Defendants.

68.     Linda Parelli breached her duty of loyalty to PNH by refusing to participate in planned PNH HAPPY HORSE brand courses of instruction while simultaneously promoting and performing, directly and through the HHHL Defendants, HAPPY HORSE and HAPPY HORSE HAPPY LIFE branded competing courses of instruction.

69.     Linda Parelli breached and continues to breach her duty of loyalty to PNH by mis-using PNH assets for the operation of her competing business, to wit: a PNH-owned computer, a PNH-owned mobile phone, a PNH mobile phone account, PNH motor vehicles, PNH horse trailer, PNH horses, PNH saddles and tack, and PNH teaching and demonstration equipment (the PNH Tangible Assets).

70.     Linda Parelli breached her duty of loyalty to PNH by, directly and in cooperation with her co-conspirators Paul Flockhart, Sue Flockhart and Happy Horse Happy Life, Inc., publishing on social media statements intended to damage the reputation of PNH, its founder, and its management team, and to gain public sympathy for herself, for the sole purpose of misappropriating PNH's Savvy Club members, customers, students and Licensed Parelli Professionals.

71.     Linda Parelli breached and continues to breach her fiduciary duty of loyalty to PNH by, directly and through her co-conspirators, inducing PNH's Licensed Parelli Professionals to breach their contracts with PNH, to resign as Licensed Parelli Professionals, and to join the competing business that she and her co-conspirators formed and operate.

72.     As a result of the above breaches, PNH suffered, and continues to suffer, irreparable injury for which injunctive relief is appropriate or, in the alternative, PNH suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Linda Parelli and the HHHL Defendants, jointly and severally, as hereinafter set forth.

## COUNT II
### TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114(1) and 1125(a)
### (As against Linda Parelli and the HHHL Defendants, jointly and severally)

73.   Plaintiff adopts, realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 56 above.

74.   PNH is the owner of the valid and subsisting federal trademark registrations for the PARELLI Marks.

75.   PNH is also the owner of the unregistered HAPPY HORSE Mark.

76.   PNH's products and services associated with the PARELLI Marks and the HAPPY HORSE Mark are marketed and sold in the U.S. and in various foreign countries.

77.   PNH has invested tremendous time, effort and financial resources in developing and promoting the PARELLI Marks and HAPPY HORSE Mark in connection with the marketing and sale of PNH's goods and services in interstate commerce.  The PNH Marks have become, through widespread and favorable industry acceptance and recognition, assets of substantial value symbolizing PNH, its quality products and services, and its goodwill.

78.   Consumers of courses of education in natural horsemanship and horse behavior recognize the PNH Marks as source indicators for PNH.

79.   As evidenced by the valid and subsisting trademark registrations, the PARELLI Marks are inherently distinctive.  PNH's HAPPY HORSE mark is also inherently distinctive and entitled to trademark protection under the Lanham Act.

80.   Linda Parelli and the HHHL Defendants wrongfully made use of, and continue to wrongfully use, the www.lindaparelli.com domain name and accompanying website (the

"Linda Parelli Website") prominently featuring the LINDA PARELLI brand name by associating them with the products and services of the competing business of Linda Parelli and the HHHL Defendants.

81.     Linda Parelli and the HHHL Defendants wrongfully made use of, and continue to wrongfully use, the LP FB Page which prominently features the LINDA PARELLI brand name by associating it with the products and services of the competing business of Linda Parelli and the HHHL Defendants.

82.     By promoting the products and services of HHHL, Inc. on the www.lindaparelli.com website and on the PNH LP FB Page, the use of the brand name LINDA PARELLI now is likely to cause confusion, or to cause mistake, or to deceive.

83.     Linda Parelli and the HHHL Defendants' use of the HAPPY HORSE, HAPPY HORSE HAPPY LIFE, and LINDA PARELLI trademarks (collectively the "Infringing Marks")  as well as the www.happyhorsehappylife.com and www.lindaparelli.com domain names (hereinafter the "Infringing Domain Names") have created a likelihood that consumers will be confused or deceived as to the sources of the parties' products and any quality assurance with resulting substantial and irreparable harm to PNH's marks, reputation, and goodwill residing therein.

84.     Defendant's use of the infringing mark LINDA PARELLI, of the infringing domain name, www.lindaparelli.com, and of the LP FB Page, has, since the time of be associated with products and services in competition with PNH, been without Plaintiff's authorization or consent.

85.     Defendants' conduct was knowing, intentional, willful and carried out with clear intent to trade upon the reputation and goodwill associated with Plaintiff's business and

the PNH Marks.

86.     Defendants' conduct was knowing, intentional, willful and carried out with clear intent to divert and harm PNH's business and convert the reputation and goodwill associated with the PNH Marks.

87.     As a direct and proximate result of the aforementioned trademark infringement by Defendants, Plaintiff has suffered and will continue to suffer substantial pecuniary injury and loss as well as significant damage to its goodwill and reputation in the education industry for the fields of horsemanship, horse training and horse behavior.

88.     The foregoing conduct of defendants constitutes trademark infringement of Plaintiff's federally registered PARELLI Marks in violation of 15 U.S.C. §1114(1) and HAPPY HORSE Mark under 15 U.S.C. §1125(a).

89.     At all material times, defendants have acted in bad faith, oppressively and maliciously toward Plaintiff, thereby entitling Plaintiff to treble damages against defendants in an unascertained amount.

90.     The above-described acts of defendants have caused and are continuing to cause irreparable injury to the public and to Plaintiff for which no adequate remedy at law exists, and for which Plaintiff is entitled to obtain injunctive relief and to recover profits, actual damages, enhanced damages, costs and reasonable attorney fees.

WHEREFORE, Plaintiff prays for judgment against Linda Parelli and the HHHL Defendants, jointly and severally, as hereinafter set forth.

## COUNT III
### FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. §1125(a)
### (As against Linda Parelli and the HHHL Defendants, jointly and severally)

91.     Plaintiff adopts, realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 56 and 73 through 90, above.

92.     Defendants' use in commerce of the Infringing Marks and the Infringing Domain Names is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendant Linda Parelli, the HHHL Defendants, the Linda Parelli Website and products and services advertised thereon, the LP FB Page and products and services promoted thereon, and the HHHL Website and the products and services promoted thereon under Plaintiff's PNH Marks or confusingly similar variations thereof, are affiliated with PNH, connected or associated with PNH, and/or endorsed, controlled, or approved by PNH when, in fact, they are not.

93.     The above-described acts of Linda Parelli and the HHHL Defendants constitute use of false designations of origin and false and misleading descriptions or representations that are likely to cause confusion, to cause mistake or to mislead as to the affiliation, connection or association of defendants with Plaintiff and its services sold under the PNH Marks in violation of 15 U.S.C. §1125(a).

94.     As a proximate result of defendants' above-described conduct, Plaintiff is informed and believes and based thereon alleges that it has been damaged in an unascertained amount.

95.     The above-described acts of Defendants have caused and are continuing to cause irreparable injury to the public and to Plaintiff for which Plaintiff has no adequate remedy at law, and for which PNH is entitled to obtain injunctive relief and to recover profits,

actual damages, enhanced damages, and other damages as may be provided by statute. The knowing, willful, and continuing nature of Defendants' conduct makes this an exceptional case for which PNH is entitled to recover its costs and reasonable attorney fees.

WHEREFORE, Plaintiff prays for judgment against Linda Parelli and the HHHL Defendants, jointly and severally, as hereinafter set forth.

### COUNT IV
### TRADEMARK INFRINGEMENT UNDER FLORIDA COMMON LAW
### (As against Linda Parelli and the HHHL Defendants, jointly and severally)

96.    As for a fourth cause of action against Defendant, Plaintiff adopts, realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 56 above.

97.    Defendants' actions described above constitute the infringement and misappropriation of Plaintiff's PNH Marks in violation of the common law of the State of Florida.

98.    Plaintiff has suffered a compensable injury by reason of Defendants' repeated and persistent activities outlined in this Count and Plaintiff is likely to suffer an irreparable injury unless Defendant's activities are permanently enjoined.

99.    Upon information and belief, Defendants' infringing activities are a willful, reckless and wanton disregard for Plaintiff's rights, justifying an award of exemplary damages and attorney fees.

WHEREFORE, Plaintiff prays for judgment against Linda Parelli and the HHHL Defendants, jointly and severally, as hereinafter set forth.

**COUNT V**
**UNFAIR COMPETITION UNDER THE FDUTPA AND COMMON LAW**
**(As against Linda Parelli and the HHHL Defendants, jointly and severally)**

100.    Plaintiff adopts, realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 56 above.

101.    Section 501.204(1) provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the Act shall be "construed liberally to promote the protection" of the "consuming public and legitimate business enterprises from those who engage in… deceptive[] or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat § 501.202 (2014).

102.    Defendants were, at all times material to the allegations herein, engaged in "trade or commerce' as defined by the Act. Fla. Stat. § 501.203 (2014).

103.    Defendants unfairly misappropriated, leveraged and exploited PNH's social media assets, and proprietary, confidential and trade secret information, including the PNH-shared Confidential Information, to build and promote their competing business.

104.    Defendants are continuing to leverage and exploit PNH's social media assets, and proprietary, confidential and trade secret information, including the PNH-shared Confidential Information, without license, authorization or permission.

105.    Defendants' actions described above constitute unfair competition in violation of the common law of the State of Florida.

106.    Upon information and belief, Defendants' actions of unfair competition described above are willful and wanton, as well as intentional and malicious.

107.    The injury to Plaintiff is irreparable. An award for monetary damages alone cannot fully compensate Plaintiff for its injuries and Plaintiff lacks an adequate remedy at law.

108.    Plaintiff has been harmed by Defendants' conduct as alleged above in amount not yet known and to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Linda Parelli and the HHHL Defendants, jointly and severally, as hereinafter set forth.

**COUNT VI**
**INJUNCTIVE RELIEF AND DAMAGES FOR**
**VIOLATION OF FLORIDA'S UNIFORM TRADE SECRETS ACT**
**(as against all Defendants)**

109.    Plaintiff adopts, realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 56 above.

110.    Linda Parelli is privy to trade secrets and confidential and proprietary business information of PNH.  Andrew Wood, Inc. and its directors, Paul "Andrew Wood" Flockhart and Sue "Lamswood" Flockhart, were also privy to trade secrets and confidential and proprietary business information of PNH.  This includes, but is not limited to, the information described in paragraph 34, supra.  This information constitutes trade secrets under section 688.002(4), Florida Statues, and/or confidential and proprietary business information of PNH.

111.    The information referenced in paragraph 34, supra, is not publicly available, nor may such information be compiled nor created by PNH's competitors without a significant investment of time, effort, and money—if at all.  PNH takes reasonable steps to protect such information from disclosure to anyone other than authorized personnel. This information provides PNH with a competitive advantage and its use or disclosure would provide PNH's competitors with an unfair economic advantage.

112.    The trade secrets and confidential and proprietary business information described above are fundamental to PNH's success and keeping such information confidential is essential to maintaining PNH's competitive advantage.

113.   Without PNH's permission, Linda Parelli, Andrew Wood, Inc. and its directors, Paul "Andrew Wood" Flockhart and Sue "Lamswood" Flockhart, have disclosed PNH's confidential, proprietary and trade secret information, including the PNH-shared Confidential Information, to Defendant HHHL, Inc. which has improperly appropriated the same.

114.   Linda Parelli and the HHHL Defendants have used PNH's confidential, proprietary and trade secret information, including the PNH-shared Confidential Information, to benefit themselves and their HHHL Instructors.

115.   Linda Parelli and the HHHL Defendants' willful misappropriation, use, and disclosure of PNH's confidential, proprietary and trade secret information, including the PNH-shared Confidential Information, has provided, and will continue to provide, them and their HHHL Instructors with an improper and unfair commercial advantage.

116.   Linda Parelli and the HHHL Defendants' actions, as described, in part, in this Count, constitute a direct violation of the Florida Uniform Trade Secrets Act, section 688.001 *et seq.* Florida Statutes.

117.   As a direct and proximate result of Linda Parelli and the HHHL Defendants' willful misappropriation, use, and disclosure of PNH's trade secrets and confidential and proprietary business information, Linda Parelli and the HHHL Defendants have caused, and will continue to cause, irreparable damages to PNH and unjust enrichment to Linda Parelli, the HHHL Defendants and the HHHL Instructors.

WHEREFORE, Plaintiff prays for judgment against Linda Parelli and the HHHL Defendants, jointly and severally, as hereinafter set forth.

**COUNT VII**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**UNDER FLORIDA COMMON LAW**
**(As against Linda Parelli and the HHHL Defendants, jointly and severally)**

118.    Plaintiff adopts, realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 56 above.

119.    At all times material hereto, Defendants had knowledge that PNH had scheduled courses of instruction for which Linda Parelli had commitments to teach and for which students had already signed up and paid deposits.

120.    Rather than honoring those commitments, Linda Parelli refused to teach them and instead, together with the HHHL Defendants, created, advertised and conducted their own competing courses of instruction under PNH's HAPPY HORSE Mark for the purposes of creating confusion as to the source, sponsorship, affiliation or endorsement of those courses and harming Plaintiff's economic interests by encouraging customers to sign up for defendants' courses rather than those of plaintiff.

121.    Moreover, at all times material hereto, defendants had knowledge that PNH had contractual relationships with its Instructors, that those Instructors were contractually bound to teach only "Pure Parelli" meaning that they are not permitted to materially alter the PARELLI branded methods of instruction, and are contractually precluded from endorsing, advertising, selling, distributing any equine related product, service, system or method of training without the express written permission of PNH.

122.    Despite the above-described knowledge, defendants directly and actively solicited PNH's Instructors to breach their contracts with PNH by, inter alia, intentionally misinforming them that they could be certified in defendants' Happy Horse Happy Life branded instructor program, and simultaneously teach both the PNH and HHHL brand methods

of horsemanship, horse training and horse behavior.

123.    After PNH informed its Instructors that Linda Parelli and the HHHL Defendants were in competition with PNH, Linda Parelli and the HHHL Defendants published their Thanksgiving Day Post viciously attacking, criticizing and defaming PNH, its founder and its management team, followed by directly contacting PNH's Instructors to actively encourage and induce them to terminate their contracts with PNH and join defendants' competing business as its instructors. To further encourage and induce PNH's Instructors to sever their contractual relationship with PNH, Linda Parelli and the HHHL Defendants blatantly lied to PNH's Instructors by, inter alia, telling them that Pat Parelli was proud that PNH's ex-instructors were still teaching the PARELLI program (out of license), falsely suggesting that PNH condoned such breaches of its licensing agreements.  The fact that such lies came directly from Linda Parelli who is married to Pat Parelli, and is a Director and owner of PNH, made them all that much more credible.  As a consequence, several PNH Instructors either terminated their contacts with PNH or elected not to renew them, joined defendants' competing business, and intend to continue to teach students using the PARELLI program under the HAPPY HORSE HAPPY LIFE brand.

124.    The above-described actions of Linda Parelli and the HHHL Defendants was, at all times material hereto, with full knowledge that PNH has contractual relationships with its Savvy Club members.

125.    Despite the above-described knowledge, defendants actively encouraged and induced PNH's Savvy Club members to cancel their memberships by publishing the derogatory and harmful posts regarding PNH, its founder and its management team, and inviting them to join defendants' competing subscription-based affinity group.  As a

consequence, PNH Savvy Club members have cancelled their memberships, decided not to renew them, and/or joined defendants' competing affinity group.

126.    As a direct and proximate result of the defendants' intentional and unjustified interference with plaintiff's contractual relations as set forth above, Plaintiff has suffered and will continue to suffer substantial pecuniary injury and loss as well as significant, pervasive and permanent damage to its reputation in the horsemanship industry.

127.    Defendants' actions described above constitute tortious interference with contractual relations in violation of the common law of the State of Florida.

128.    Upon information and belief, Defendants' actions of tortious interference described above are willful and wanton, as well as intentional and malicious, justifying an award of exemplary damages and attorney's fees.

129.    Plaintiff has been harmed by Defendants' conduct as alleged above in an amount not yet known.

WHEREFORE, Plaintiff prays for judgment against Linda Parelli and the HHHL Defendants, jointly and severally, as hereinafter set forth.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS
## UNDER FLORIDA COMMON LAW
### (As against Linda Parelli and the HHHL Defendants, jointly and severally)

130.    Plaintiff adopts, realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 56, and 118 through 129, above.

131.    At all times material hereto, Defendants were aware of the existence of Plaintiff's advantageous business relationships and prospective business relationships with PNH's Instructors, Savvy Club members, students and customers, as well as with its

prospective Instructors, Savvy Club members, students and customers.

132.    Defendants intentionally and unjustifiably interfered with those relationships and prospective relationships through their actions as described in paragraphs 38 through 56 and 118 through 129, above.

133.    As a direct and proximate result of the aforementioned tortious conduct of Defendants, Plaintiff has suffered and will continue to suffer substantial pecuniary injury and loss as well as significant, pervasive and permanent damage to its reputation in the education industry for the fields of horsemanship, horse training and horse behavior.

134.    Defendants' actions described above constitute tortious interference with existing and prospective advantageous business relations in violation of the common law of the State of Florida.

135.    Upon information and belief, Defendant's actions of tortious interference described above are willful and wanton, as well as intentional and malicious, justifying an award of exemplary damages and attorney's fees.

136.    Plaintiff has been harmed by Defendants' conduct as alleged above in an amount not yet known.

WHEREFORE, Plaintiff prays for judgment against Linda Parelli and the HHHL Defendants, jointly and severally, as hereinafter set forth.

**COUNT IX**
**CIVIL CONSPIRACY**
**(As against Linda Parelli and the HHHL Defendants, jointly and severally)**

137.    Plaintiff adopts, realleges and incorporates by reference all of the allegations set forth in the preceding paragraphs.

138.     Linda Parelli and the HHHL Defendants shared the common goals of damaging PNH's reputation, developing products and services to compete with PNH, and acquiring PNH's Savvy Club members, Licensed Parelli Professionals and customers for those of its own.

139.     Linda Parelli and the HHHL Defendants agreed to accomplish that goal through the wrongful conduct described above. Defendants' concerted actions were wrongful because, among other things, those actions constituted:

- trademark infringement (as set forth in Counts II and IV, above);

- unfair competition (as set forth in Count III, above);

- deceptive and unfair trade practices (as set forth in Count V, above);

- theft of trade secrets (as set forth in Count VI, above); and

- tortious interference with PNH's contractual relations and advantageous business relationships (as set forth in Counts VII and VIII, above).

140.     As a proximate result of defendants' concerted actions, PNH suffered and continues to suffer damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against Linda Parelli and the HHHL Defendants, jointly and severally, as hereinafter set forth.

**COUNT X**
**BREACH OF CONTRACT**
**(As against Andrew Wood, Inc.)**

141.     Plaintiff adopts, realleges and incorporates by reference all allegations set forth in paragraphs 1 through 56 above.

142.     Andrew Wood, Inc. owes PNH the contractual duties contained in the Marketing Consulting Agreement between PNH and Andrew Wood, Inc.

143.     Andrew Wood, Inc. breached those duties by disclosing to, and facilitating the use of, Confidential Information as defined in the above-recited agreement by the HHHL Defendants, including, but not limited to, PNH's customers, PNH business matters, business affairs and methods of business operations.

144.     As a result of those breaches, PNH suffered irreparable injury for which injunctive relief is appropriate or, in the alternative, PNH suffered damages in an amount to be determined at trial.

145.     Plaintiffs have retained the undersigned attorney to represent their interests in this matter and are obligated to pay said attorney a reasonable fee for services rendered. Plaintiffs are entitled to attorney's fees pursuant to Florida Statutes, §501.2105 and Florida Statutes §501.211.

WHEREFORE, Plaintiff prays for judgment against defendant, Andrew Wood, Inc. as hereinafter set forth.

### COUNT XI
### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (As against Andrew Wood, Inc.)

146.     Plaintiff adopts, realleges and incorporates by reference all of the allegations set forth in paragraphs 1 through 56 above.

147.     PNH and Andrew Wood, Inc. entered into an express verbal agreement with one another effective January 1, 2009 whereby, inter alia, Andrew Wood, Inc. would provide marketing services for PNH and PNH would pay for those services.

148.     Pursuant to the above-recited verbal agreement, Andrew Wood, Inc. performed marketing services for PNH during the period January 1, 2009 through December 31, 2009, and PNH fully paid Andrew Wood, Inc. for those marketing services.

149.    All conditions required for Andrew Wood, Inc.'s performance under the verbal agreement occurred.

150.    Pursuant to the above-recited verbal agreement, Andrew Wood, Inc. implicitly promised to act in good faith and not do anything to unfairly interfere with the rights or property of PNH.

151.    Pursuant to the above-recited verbal agreement, PNH entrusted Andrew Wood, Inc. with confidential, proprietary and trade secret information of PNH for the sole purposes of enabling Andrew Wood, Inc. to carry out the marketing services for PNH.

152.    Andrew Wood, Inc. breached its duties of good faith and fair dealing by disclosing to, and facilitating the use of, PNH's confidential, proprietary and trade secret information by the HHHL Defendants, including, but not limited to, PNH's customer information, PNH business matters and affairs, and methods of business operations.

153.    As a result of those breaches, PNH suffered irreparable injury for which injunctive relief is appropriate or, in the alternative, PNH suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment against defendant, Andrew Wood, Inc. as hereinafter set forth.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Parelli Natural Horse-Man-Ship, Inc., prays that:

1.    the Court enter a judgment in favor of Plaintiff and against defendant, Linda Parelli, on Count I, and order as follows:

    a)    that Plaintiff be awarded money damages for defendant Linda Parelli's breach of fiduciary duty;

b) that defendant be compelled to disgorge to Plaintiff any and all profits derived by defendant from her breach of fiduciary duties, breach of duty of loyalty, and other wrongful acts when such duties existed or from transactions which had their inception before those duties terminated;

c) that defendant be required to pay to Plaintiff the costs of this action and Plaintiffs' reasonable attorneys' fees pursuant to C.R.S. §§ 7-74-105 or 6-1-113(2)(b), and under Colorado law for breach of fiduciary duty;

2. the Court enter a judgment in favor of Plaintiff and against defendants, Linda Parelli, Paul Flockhart aka Andrew Wood, Sue Flockhart aka Sue Lamswood, and Happy Horse Happy Life, Inc., jointly and severally, on Counts II, III, IV, V, VII, VIII and IX, and order as follows:

a) that defendants, their officers, directors, agents, representatives, employees, assigns and suppliers and all persons acting in concert or privity with defendants be permanently enjoined from:

   i. using the PARELLI Marks or HAPPY HORSE Mark in connection with Defendants' goods or services;

   ii. using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to the trademarks, trade dress, service marks, names or logos of Parelli Natural Horse-Man-Ship, Inc.;

   iii. using any trademark, trade dress, service mark, logo, design or source designation of any kind on or in connection with Defendants' goods or

services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Parelli Natural Horse-Man-Ship, Inc., are sponsored or authorized by Parelli Natural Horse-Man-Ship, Inc., or are in any way connected with, controlled by, or related to Parelli Natural Horse-Man-Ship, Inc.;

iv.  registering, trafficking in, or using, in any manner, any Internet domain name that incorporates, in whole or in part, any of the PNH Marks or any name, mark or designation confusingly similar thereto;

v.  contacting any customer or prospective customer in Parelli Natural Horse-Man-Ship, Inc.'s customer list or database; and

vi.  assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs 2(a)(i) through 2(a)(v) above;

b)  that defendants be ordered to file with the Court and serve upon Plaintiffs a written report under oath setting forth in detail the manner and form in which defendants have complied with the injunction and judgment within thirty (30) days after the service of the injunction and judgment upon defendants;

c)  that defendants be ordered to transfer the Infringing Domain Names and every domain name they own which is identical or confusingly similar to any of the PNH Marks to Plaintiff at defendants' cost;

d)  that defendants be compelled to account to Plaintiff for any and all profits derived by defendants from the sale, distribution or provision of infringing goods and services as proven at the trial of this cause, including prejudgment

interest thereon;

e) that based on defendants' willful and deliberate infringement of Plaintiff's trademarks, and to deter such conduct in the future, Plaintiff be awarded treble damages as provided by 15 USC § 1117 and pursuant to Florida law;

f) that defendants be compelled to disgorge to Plaintiff any and all profits derived by defendants from Linda Parelli's breach of fiduciary duties, breach of duty of loyalty, and other wrongful acts when such duties existed or from transactions which had their inception before those duties terminated;

g) that Plaintiff be awarded increased or treble damages under the Florida Deceptive and Unfair Trade Practices Act based on defendants' deceptive trade practices and bad faith conduct;

h) that the Court consider this case exceptional entitling Plaintiff to reimbursed of reasonable attorney's fees;

i) that this Court award any such equitable or other relief pursuant to Section 501.207(3), Florida Statutes; and

j) that this Court award such other and further relief as the Court deems just and proper;

3. the Court enter a judgment in favor of Plaintiff and against all defendants on Count VI for their violation of the Florida Uniform Trade Secrets Act, and order as follows:

a) that defendants, their agents, representatives, employees, assigns and suppliers and all persons acting in concert or privity with defendants be permanently enjoined from the present and future use of Plaintiff's confidential, proprietary and trade secret information;

b) that defendants be ordered to return to Plaintiff (and remove from defendants' access or possession) all documents, electronically stored information, databases, customer lists, vendor lists, and other of Plaintiff's confidential, proprietary or trade secret information obtained from Linda Parelli, from any of Plaintiff's employees operating under Linda Parelli's direction, from Andrew Wood, Inc., or from either of Andrew Wood, Inc.'s directors, Paul "Andrew Wood" Flockhart or Sue "Lamswood" Flockhart;

c) that Plaintiff be awarded damages, exemplary damages, together with prejudgment interest thereon, and costs, and attorneys' fees for the unlawful misappropriation of Plaintiff's trade secrets as available under the Florida Uniform Trade Secrets Act; and

d) such additional relief as is necessary to protect Plaintiff's rights and interests;

4. the Court enter a judgment in favor of Plaintiff and against defendant Andrew Wood, Inc. on Counts X and XI, and order as follows:

a) that defendant, officers, directors, agents, representatives, employees, assigns and suppliers and all persons acting in concert or privity with defendant be permanently enjoined from the present and future use of Plaintiff's confidential, proprietary and trade secret information, including the PNH-shared Confidential Information defined in this Complaint;

b) that defendant be ordered to return to Plaintiff (and remove from defendant's access or possession) Plaintiff's confidential, proprietary and trade secret information, including the PNH-shared Confidential Information defined in this Complaint;

c) that Plaintiff be awarded money damages to be proven at the trial of this cause together with prejudgment interest thereon, and costs, for defendants breach of contract and breach of its implied covenant of good faith and fair dealing; and

d) such additional relief as is necessary to protect Plaintiff's rights and interests;

5. that the defendants be ordered to account to Plaintiff for and disgorge all profits they have derived by reason of the unlawful acts complained of above; and

6. that Plaintiff be awarded such other relief as may be appropriate.

DATED this 21st day of December 2020.

*/s/ Douglas Wm. Massinger*
**Douglas Wm. Massinger**
FL Bar No. 855,391
**MASSINGER LAW OFFICES**
887 NE 100 Street
Ocala, FL  34479
(352) 351-0351 (Ph)
(352) 351-0359 (Fx)
dwm@massingerlaw.com
*Attorney for Plaintiff*


*/s/ Amber N. Davis*
Amber N. Davis
Florida Bar No. 0026628
Email: adavis@savvyIPLaw.com
Kevin W. Wimberly
Florida Bar No. 0057977
Email: kwimberly@savvyIPLaw.com
Amaris C. Gyebi
Florida Bar No. 1019361
Email: Agyebi@savvyIPLaw.com
WOLTER VAN DYKE DAVIS, PLLC
390 N. Orange Ave., Suite 2500
Orlando, Florida 32801
Office:  (407) 926-7700
Facsimile: (407) 926-7720